# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**CAROL A. THOMAS,**

    Plaintiff,

**v.**                                                               **CIVIL ACTION NO. 3:13-CV-56**
                                                                                  **(JUDGE GROH)**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

    Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND OVERRULING OBJECTIONS

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge John S. Kaull. By Standing Order, this action was referred to Magistrate Judge Kaull for submission of a proposed R&R. Magistrate Judge Kaull filed his R&R [Doc. 16] on March 13, 2014. In the R&R, Magistrate Judge Kaull recommends that the Court grant the Commissioner of Social Security's Motion for Summary Judgment because substantial evidence supported the Administrative Law Judge's ("ALJ") denial of the Plaintiff's application for disability insurance benefits.

## I. Background

On October 27, 2010, Carol A. Thomas applied for disability insurance benefits, alleging that she had a disability due to anxiety, depression, and post-traumatic stress

1

disorder. Thomas' application was denied initially and on reconsideration. Thomas then requested a hearing before an ALJ. On March 9, 2012, the ALJ held a hearing. The ALJ issued a decision denying Thomas benefits on March 23, 2012, finding that Thomas was not disabled. The Appeals Council denied Thomas' request for review on April 15, 2013, thereby rendering the ALJ's decision the final decision of the Commissioner.

On May 22, 2013, Thomas filed this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's decision denying her claims for disability insurance benefits under Title II of the Social Security Act. See 42 U.S.C. §§ 401-33. After submitting the administrative record, the parties each filed a motion for summary judgment. On March 13, 2014, Magistrate Judge Kaull issued his R&R recommending that the Court grant the Commissioner's Motion for Summary Judgment. Thomas timely filed objections to the R&R on March 27, 2014.

## II. Standard of Review

### 1. Review of the R&R

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must review *de novo* those portions of the magistrate judge's findings to which Thomas objects. However, failure to file objections permits the district court to review the R&R under the standards that the district court believes are appropriate, and if parties do not object to an issue, the parties' right to *de novo* review is waived as to that issue. See Webb v. Califano, 468 F. Supp. 825 (E.D. Cal. 1979). Therefore, this Court will review conduct a *de novo* review only as to those portions of the R&R to which Thomas objects and will review the remaining portions of the R&R for clear error.

2

## 2. Review of the ALJ Decision

The Social Security Act limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The phrase "supported by substantial evidence" means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Perales, 402 U.S. at 401 (citing Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

A reviewing court must not re-weigh the evidence or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456. Ultimately, it is the duty of the ALJ reviewing a case, not the responsibility of the Court, to make findings of fact and to resolve conflicts in the evidence. King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This Court does not find facts or try the case *de novo* when reviewing disability determinations."); see also Seacrist v. Weinberger, 528 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.").

## 3. Evaluation Process

To determine whether a claimant is disabled, the ALJ conducts a five-step evaluation process. 20 C.F.R. § 404.1520(a)(4). If the ALJ finds that the claimant is disabled or not disabled at a step, the ALJ does not proceed to the next step. Id. The steps are as follows:

> Step One: Determine whether the claimant is engaging in substantial gainful activity;
>
> Step Two: Determine whether the claimant has a severe impairment;
>
> Step Three: Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;
>
> Step Four: Consider the RFC assessment to determine whether the claimant can perform past relevant work; and
>
> Step Five: Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

Davidson v. Astrue, Civil Action No. 2:11-CV-55, 2012 WL 667296, at *3 (N.D.W. Va. Feb. 28, 2012) (citing 20 C.F.R. § 404.1520(a)(4)).

Here, the ALJ found no disability after conducting steps three and four. R. at 19-26. For step three, the ALJ assessed Thomas' RFC as follows:

> [Thomas] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: work should involve production rate or pace work; work is limited to simple, routine, and repetitive tasks, involving only simple, work-related decisions with few, if any, work place changes; and work should entail no interaction with the public and no more than occasional contact with coworkers with no tandem tasks.

Id. at 19. The ALJ then concluded that, in light of the RFC assessment, Thomas "is capable of performing past relevant work as a hand packager." Id. at 24.

### III. Discussion

Thomas argues that the R&R errs by concluding that substantial evidence supported the ALJ's decision. She objects on two grounds: (1) that the medical evidence in the record–specifically, the Global Assessment of Functioning ("GAF") scores issued by her treating physicians–supports her disability claim; and (2) the ALJ erred by assigning greater

4

weight to the opinions of two state agency consultants, Dr. Comer and Dr. Shaver.

## 1. The ALJ Assigned Proper Weight to the Plaintiff's GAF Scores.

The ALJ explained that Thomas' "treatment records (but not the GAF scores from those records)" supported the RFC assessment. R. at 24. Thomas argues that substantial evidence does not support the ALJ's decision to give little weight to her GAF scores. She avers, for example, that she "was found to have consistently low GAF scores in the 25 to 35 range over multiple years."

When evaluating opinion evidence, "more weight is given to longitudinal opinion evidence." Foster v. Astrue, Civil Action No. 11-1077-OP, 2012 WL 243253, at *3 (C.D. Cal. Jan. 23, 2012) (citing 20 C.F.R. § 416.927(d)(2)) (finding that ALJ could discredit a GAF score, "a 'snapshot' assessment" of a plaintiff's condition, where the longitudinal evidence demonstrated improvement). Given this principle, while "[a] GAF score may reflect the severity of a patient's functioning or her impairment in functioning at the time the GAF score is given," it "is not meaningful" absent "additional context." Green v. Astrue, Civil Action No. 1:10-1840-SVH, 2011 WL 1770262, at *18 (D.S.C. May 9, 2011). Indeed, "[a] GAF score is intended to be used in treatment decisions and may have little to no bearing on a plaintiff's occupational functioning." Love v. Astrue, Civil Action No. 3:11CV14-FDW-DSC, 2011 WL 4899989, at *4 (W.D.N.C. Sept. 6, 2011) (citations omitted). "Essentially, 'a GAF score, without evidence that it impaired [the] ability to work, does not establish an impairment.'" Davidson v. Astrue, Civil Action No. 2:11-CV-55, 2011 WL 7438791, at *23 (N.D.W. Va. Dec. 14, 2011) (quoting Camp v. Barnhart, 103 F. App'x 352, 354, 2004 WL 1465777, at *1 (10th Cir. June 30, 2004)). The Commissioner takes a similar approach to GAF scores, stating that the GAF scale

5

"does not have a direct correlation to the severity requirements in our mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000); see also Beasley v. Astrue, Civil Action No. 7:10-CV-232-FL, 2012 WL 707091, at *5 (E.D.N.C. Mar. 5, 2012).

Here, the ALJ properly gave the Plaintiff's GAF scores limited weight. The ALJ explained that he generally does so due to the nature of GAF scores:

> Further, regarding GAF scores in general, the Administrative Law Judge accords them relatively little weight or reliability in determining a claimant's mental status or functioning over any period of twelve or more continuous months. These scores are essentially based completely on the claimant's subjective complaints and other statements at that particular point in time. This body of often uncorroborated subjective statements is then subjectively processed through the evaluator's own individual mindset and interpretations regarding mental impairments, symptoms, severity and other factors. The undersigned believes that such a process can well lead to inaccuracies and inconsistencies. Thus, these scores are accorded only limited weight.

R. at 21. This approach is consistent with the principle that a GAF score is not meaningful in and of itself. See Davidson, 2011 WL 7438791, at *23; Love, 2011 WL 4899989, at *4; Green, 2011 WL 1770262, at *18. Indeed, the ALJ is not required to base his decision exclusively on GAF scores. Beasley, 2012 WL 707091, at *5 (explaining that, though GAF scores may be relevant, there is no requirement "to determine the extent of a claimant's mental disability based entirely on GAF scores"); see also Green, 2011 WL 1770262, at *18 (remanding where, among other things, the ALJ erred in relying heavily on a GAF score to discount opinions of plaintiff's treating psychiatrist and counselor). Therefore, the ALJ did not err by affording the Plaintiff's GAF scores limited weight.

Even so, substantial evidence supported the ALJ's assessment of the Plaintiff's

6

GAF scores because he accorded them limited weight after considering them in the context of the Plaintiff's record of medical care. See Foster, 2012 WL 243253, at *3-8 (finding no error in discounting of GAF scores where ALJ considered them in light of longitudinal opinion evidence).

The ALJ discussed the following GAF scores assigned to Thomas–a GAF score of 25 issued in April 2009 when Thomas was admitted to a crisis stabilization unit ("CSU"), a GAF score of 23 issued in August 2009 when admitted to the CSU,[1] and a GAF score of 35 issued on November 20, 2009. R. at 222, 224, 411, 422. A GAF score of 30 through 21 indicates: "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (emphasis omitted). A GAF score of 40 through 31 indicates:

> Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

Id. (emphasis omitted).

In assessing these scores, the ALJ acknowledged that the "CSU admissions suggest the presence of serious symptoms during those brief exacerbations of

---

[1] The ALJ misstated this GAF score as 25. R. at 20. This error does not impact the validity of his assessment of the GAF scores because GAF scores of 23 and 25 fall in the same range on the GAF scale.

symptoms." R. at 21. The ALJ, however, then considered the context of the GAF scores–specifically referencing progress notes from medication management appointments on September 14, 2009, September 28, 2009, October 12, 2009, and November 9, 2009–and found that the GAF scores were inconsistent with those records. Id. He explained:

> Thus, the claimant's baseline level of functioning is far better than those acute exacerbations of symptoms in April and August 2009. In October and November 2009, she was maintaining her baseline status, and her presentation was similar to what it was in September 2009. However, despite normal findings in November 2009, the claimant's treatment source assigned the claimant a GAF of 35, which indicates some impairment in reality. Exhibit 5F. This finding appears far out of proportion with the claimant's presentation at the time. Indeed, the GAF scores in the record are highly questionable given the fact that she was assigned scores of 35 when she was maintaining her baseline functioning.

Id.

Reviewing the progress notes at issue, substantial evidence supports the ALJ's decision to find that Thomas maintained a baseline level of functioning that was inconsistent with the GAF scores. The September 14, 2009 progress note states:

> Carol appears today for the scheduled appointment. The patient described having no difficulties. Patient is sleeping well. Appetite is good. Denies irritability or agitation. Reports feeling depressed. Denies any problems with medications. Still having some depression, not sleeping all day like she had been, feels restless, overwhelmed, reports no agitation, less mood swings. Has been spending time with her daughter and this seems to help. The patient is cooperative. Appearance is unremarkable. Activity level is normal. Speech is normal. Oriented to person, place and time. Denies hallucinations. As a result of my assessment the patient has no indications of being at an increased risk for danger to self or others.

Id. at 418. Similarly, the September 28, 2009 progress note states:

> Carol appears today for the scheduled appointment. The patient

8

> described having no difficulties. Patient is sleeping well. Appetite is good. Energy level is reported as normal. Reports feeling depressed. Denies any problems with medications. Reports having a lot on her mind, reports is very concerned about her place of employment and is a little frustrated at this time. Reports has a lot planned today and feels a little rushed to get it done. The patient is cooperative. Appearance is unremarkable. Activity level is normal. Speech is normal. Affect is normal. Oriented to person, place and time. Denies hallucinations. As a result of my assessment the patient has no indications of being at an increased risk for danger to self or others.

Id. at 419. Next, the October 12, 2009 progress note states:

> Carol appears today for the scheduled appointment. The patient has no difficulties today. Patient is sleeping well. Appetite is good. Denies irritability or agitation. Reports feeling depressed. Denies any problems with medications. Reports has been out of Abilify for a few weeks, reports feeling a little weepy at times, but concerns that her BS may be elevating, so we are going to decrease her dose for a month and see if this helps. The patient is cooperative. Appearance is unremarkable. Activity level is normal. Speech is normal. Affect is normal. Oriented to person, place and time. Denies hallucinations. As a result of my assessment the patient has no indications of being at an increased risk for danger to self or others.

Id. at 420. Last, the November 9, 2009 progress note states:

> Carol appears today for the scheduled appointment. The patient has no difficulties today. Patient is sleeping well. Appetite is good. Denies irritability or agitation. Reports feeling depressed. Denies any problems with medications. Reports has been doing pretty good, has moved in with her daughter, reports was having some financial problems, reports no side effects. Still grieving the death of her grandson. The patient is cooperative. Appearance is unremarkable. Activity level is normal. Speech is normal. Affect is normal. Oriented to person, place and time. Denies hallucinations. As a result of my assessment the patient has no indications of being at an increased risk for danger to self or others.

Id. at 421. In all of these progress notes, the physician stated Thomas "is maintaining baseline." Id. at 418-21. A reasonable mind viewing these notes might find that they contradict a conclusion that Thomas experienced delusions, had "serious impairment in communication or judgment," could not function in nearly all areas, had "some

9

impairment in reality testing or communication," or had "major impairment in several areas"–the characteristics that the GAF scores purportedly represent.  See Diagnostic and Statistical Manual of Mental Disorders 32 (emphasis omitted).  One could reasonably find that the notes document that Thomas maintained a baseline for several months contrary to the GAF scores where, among other things, she did not experience delusions, maintained a normal level of activity, denied having any difficulties, had normal speech, slept well, ate well, interacted with others, and had an unremarkable appearance.  Id.  Therefore, a reasonable mind might discount the GAF scores as conflicting with longitudinal evidence of Thomas' treatment from the same time period.

Although Thomas urges the Court to consider six other treatment notes, this Court does not reweigh the evidence when reviewing the ALJ's decision.  See Hays, 907 F.2d at 1456.  It is also critical to note that Thomas does not point to any evidence from the physicians who assigned the GAF scores that she was precluded or otherwise impaired in her ability to work.  Such evidence has been deemed necessary to establish an impairment based on a GAF score.  Davidson, 2011 WL 7438791, at *23.  Accordingly, the Court overrules this objection because substantial evidence supports the ALJ's decision to afford limited weight to Thomas' GAF scores.

### 2. The ALJ Assigned Proper Weight to the Opinions of Dr. Comer and Dr. Shaver.

The ALJ adopted the opinions of Dr. Comer and Dr. Shaver, explaining this decision as follows:

> As for the opinion evidence, great weight is accorded to the opinion of Dr. Philip Comer, Ph.D, the State agency consultant who prepared the initial psychiatric review technique and mental residual functional capacity assessment.  Dr. Comer did not personally examine the claimant, but he

had access to the detailed consultive examination report prepared by Dr. Barbara Rush, Ph.D., as well as the claimant's treatment records. Dr. Comer's opinion reflects an appropriate consideration of this evidence. Dr. Comer's assessment is also consistent with the rest of the evidence as a whole. Indeed, he persuasively explained the claimant's work-related activities as follows:

> Claimant's statements are reasonably consistent with CE and other evidence in file and are credible from her perspective however, she appears to have the mental/emotional capacity for work like activity in a work environment that has minimal social interaction requirements.

Exhibit 9F. Dr. Comer's opinion is buttressed by the subsequent opinion of Dr. Joseph Shaver, Ph.D., another State agency consultant. Exhibit 14F. The fact that these two experts prepared separate reports and reached similar conclusions lends credibility to each assessment. Drs. Comer and Shaver have accurately depicted the claimant's functional limitations, and the evidence as a whole, in the above residual functional capacity. Their findings in the psychiatric review technique are equally as persuasive, and they have been adopted in full. Exhibits 10F and 13F.

R. at 23.

Thomas argues that the ALJ erred by assigning greater weight to the opinions of Dr. Comer and Dr. Shaver. She takes issue with the fact that their reports, submitted approximately one year before the hearing, were not based on the entire record.

The Third Circuit Court of Appeals rejected a similar argument in <u>Chandler v. Commissioner of Social Security</u>, 667 F.3d 356 (3rd Cir. 2011). In <u>Chandler</u>, the district court determined that substantial evidence did not support the ALJ's decision as no medical expert opinion supported the RFC determination. <u>Id.</u> at 360. In doing so, the district court rejected the report of a State agency medical consultant because he had only reviewed the plaintiff's medical records through June 2008 and did not consider any records leading up to the June 2009 hearing before the ALJ. <u>Id.</u> at 359-60. The Third Circuit reversed, holding that the ALJ properly considered the consultant's report.

11

Id. at 361-62. To reach this conclusion, the Third Circuit explained that the time that passed between the report and hearing did not invalidate the opinion:

> Second, because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where "additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required. SSR 96–6p (July 2, 1996) (emphasis added). The ALJ reached no such conclusion in this case.

Id. at 361 (footnote omitted).

Here, the fact that approximately one year passed between the creation of the reports and the hearing does not invalidate or otherwise undermine the opinions of Dr. Comer and Dr. Shaver. See id.; see also Starcher v. Colvin, Civil Action No. 1:12-01444, 2013 WL 5504494, at *7 (S.D.W. Va. Oct. 2, 2013) (rejecting argument that ALJ should have discounted state agency psychologists' opinions because they were rendered before a majority of the evidence became available); Geiger v. Astrue, Civil Action No. 2:11CV00055, 2013 WL 317564, at *7 (W.D. Va. Jan. 27, 2013) ("The simple fact that those opinions came later in time than the state agency opinions does not mean that they should be accorded greater weight."). Additionally, as in Chandler, the ALJ did not conclude that any of the medical evidence received between the reports' submission and the hearing could change their opinions. See 667 F.3d at 361. Moreover, the fact that the ALJ afford great weight to Dr. Comer's and Dr. Shaver's reports largely based on their consistency with one another further demonstrates that substantial evidence supported his decision. See 20 C.F.R. § 404.1527(c)(4)

("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Accordingly, substantial evidence supports the ALJ's decision to afford great weight to the opinions of Dr. Comer and Dr. Shaver. The Court therefore overrules this objection.

### IV. Conclusion

Upon review of the above, the Court **OVERRULES** the Plaintiff's objections. It is the opinion of this Court that the Report and Recommendation should be, and is, hereby **ORDERED ADOPTED**. For the reasons more fully stated in the Report and Recommendation, this Court **GRANTS** that the Commissioner's Motion for Summary Judgment and **DENIES** the Plaintiff's Motion for Summary Judgment. Accordingly, this Court further **ORDERS** that this matter be **DISMISSED WITH PREJUDICE** and that it be **STRICKEN FROM THE DOCKET OF THIS COURT**. The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: June 25, 2014

GINA M. GROH
UNITED STATES DISTRICT JUDGE